IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,    CR. NO. 02-393(#13) (PG)

V.

MIZAURY LOPEZ SOTO (#13)

Defendant.

# MOTION RENEWING REQUESTS FOR MISTRIAL AND A NEW TRIAL

TO THE HONORABLE COURT:

COMES NOW the above-captioned defendant Mizaury Lopez Soto, through the undersigned court-appointed counsel, and respectfully states and prays:

1. On May 27, 2003 a Status Conference was held before this Honorable Court, and the government reiterated that it was going to present evidence against the appearing defendant regarding the murder of "Santito", an individual supposedly referred to by the Prosecution as an enemy to the "Avispas" drug gang.

2. Attached hereto as Exhibit 1 is a copy of pages 1 and 24 of the May 27, 2003 Status conference transcript that categorically establishes that the prosecution was unequivocally going to present this murder evidence, and the court knew it and allowed it. Irene Feldman, AUSA was the individual that "opened the door" to the murder of Santito by announcing that it was going to present said evidence and the Court at all times knew that this was the case. Mr. López Soto's position at all times was that the evidence proffered and produced in discovery and in the Jenck's material provided was exclusively related to the murder of Santito. That is the reason why Mr. López Soto's opening statement and defense preparation anticipated and addressed the murder of

Santito. Had the prosecutor not opened the door regarding said evidence the defendant would definitely not have addressed the matter at opening statements.

3. The making of an opening statement does not and did not open any evidentiary doors. Opening statements are not evidence therefore it cannot open any doors for the admission of evidence pertinent to the charges before the court.

4. The defendant respectfully submits that this Honorable Court allowed the retaining of a firearms expert, who concluded that the firearm mentioned by government informant Carlos Ruben Collazo as having been the one used for the murder of "Santito" allegedly committed by the appearing defendant, in all probability, was not the make nor the type of weapon used, based on the examination of the projectiles found in the victim's body and analyzed by the expert at the P. R. Institute of Forensic Science upon the court's orders. Copy of the pertinent part of the expert's report (Exhibit 7 to a Motion to Reconsider Denial of Use of Expert Testimony and autopsy As Exculpatory and Impeachment Evidence on Behalf of the Defendant" filed in open court on 9/11/03 with Courtroom Deputy Clerk Tere Molfulleda is attached hereto as Exhibit 2 to this Motion for the Honorable Court's easy reference. Furthermore, the prosecution stipulated during the trial that the bullets found in the body of Santito were not from the firearm Mr. López Soto was charged with in a local case included as an overt act in the indictment

5. Defendant respectfully submits that these two documents attached hereto fully support previous motions filed with the Court seeking a mistrial and/or new trial based on the arguments made therein prior to this motion, which are fully incorporated herein.

RESPECTFULLY SUBMITTED, in San Juan, Puerto Rico, this 21st day of September 2005.

3

I HEREBY CERTIFY THAT THIS MOTION HAS BEEN ELECTRONICALLY FILED THROUGH ECF WITH THE CLERK OF THE COURT.


S/ FRANK D. INSERNI MILAM
**FRANK D INSERNI MILAM**
**USDC-PR 127807**
COURT APPOINTED COUNSEL FOR MIZAURY LOPEZ SOTO
P O BOX 193748, HATO REY PR 00919-3748
TELEPHONES (787)-759-7572/763-3851/FAX: 787-763-5223
E-mail: finserni@prtc.net


C:\OLD486\WPDOCS\motions\LOPEZ Soto, M\Lopez Soto, M   MOTION 91205.doc

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                FOR THE DISTRICT OF PUERTO RICO
 3
 4
 5     UNITED STATES OF AMERICA       :
 6                                    :
 7     VS.                            :    CR-02-0393 (JPG)
 8                                    :
 9     1) JOSE ANIBAL DAVILA LOPEZ    :
10     (plus the list of the 43 defendants)
11
12
13                    FOURTH STATUS CONFERENCE
14          was held before the HONORABLE Juan M. Perez Gimenez
15               on Tuesday, May 27, 2003 at 9:30 a.m.
16
17
18
19     FOR THE GOVERNMENT:
20     IRENE C. FELDMAN, AUSA
21
22     FOR THE DEFENDANTS:
23     1) JUAN ACEVEDO CRUZ, ESQ.
24     (plus other defense attorneys for the other defendants)
25
```

24

1  I'd like to know now if they are going to use the murder of a
2  person known as "Santitos" in the case in chief. Because if that
3  is the case, then I need to have the Court rule on some ex parte
4  motions that I filed.
5      THE COURT: I already ruled on the ex parte
6  motions.
7      MR. INSERNI MILAM: But, Your Honor, I'd like to
8  know from the government to tell me now if they are going to
9  use the murder of Santitos in the case in chief in this case, so
10 that I can then prepare for that, Your Honor. Because Ms.
11 Feldman's representations, Your Honor, always have been
12 that, no, that they are not interested in that, that he's just
13 involved in the conspiracy. And I need to know that, Your
14 Honor, particularly today.
15     THE COURT: You are going to know it within the next
16 10 seconds...
17     MR. INSERNI MILAM: Thank you, Your Honor.
18     AUSA FELDMAN: Yes, the murder of Santitos in
19 relation to Mizaury Lopez, Mr. Inserni's client, is information and
20 evidence that the government intends to use at trial.
21     MR. INSERNI-MILAM: Then, Your Honor, I pray
22 respectfully that you reconsider and re-decide my motions filed
23 before the Court.
24     THE COURT: If you file them again, I'll reconsider
25 them.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

CR. NO. 02-393(#13)(PG)

V.

MIZAURY LOPEZ SOTO (#11)

Defendant

## MOTION TO RECONSIDER DENIAL OF USE OF EXPERT TESTIMONY AND AUTOPSY AS EXCULPATORY AND IMPEACHMENT EVIDENCE ON BEHALF OF THE DEFENDANT

TO THE HONORABLE COURT:

COMES NOW the above captioned defendant, Mizaury Lopez Soto, through her undersigned court appointed counsel, and respectfully states and prays:

1. On May 8, 2003 the above captioned defendant filed a motion entitled "SEALED EX PARTE REQUEST FOR APPROVAL OF PENDING MATTERS REGARDING PREVIOUS EX PARTE REQUESTS AND FOR APPROVAL OF FIREARMS AND POLYGRAPH EXPERTS"

2. Said motion stated in its pertinent parts (including the footnotes thereto) as follows:

   "3. Defendant respectfully submits to the Honorable Court that the government has only produced three REDACTED AND INCOMPLETE minutes of Grand Jury testimony, but by unknown witnesses, all of which point to allegations that the above captioned defendant was the trigger man and was involved in the killing of Santiago for which murder he is being charged before the Guayama Superior Court, and which is scheduled to start trial on June 9, 2003.

   4. Defendant respectfully submits to the Honorable Court that the only Jencks material, or, the only discovery provided to the undersigned so far, allegedly connecting defendant to said murder is testimony by unknown witnesses, which do not clearly state

*Exhibit 2*

# TECHNICAL REPORT

Review of Ballistics Related Evidence Pertaining to the Shooting Incident of 5 March 1997, Guayama, Puerto Rico

Regarding the U.S. District Court Case No. 02-393 (#13) (PG)
United States District Court v. Misuary Lopez-Soto

Prepared by:

David A. Keen, P.C.



SINCE 1956

8 September 2003

Under TASA Contract # PR-17-0034
Technical Advisory Service for Attorneys, The TASA Group
1166 DeKalb Pike
Blue Bell, PA 19422-1853
Tel 610-275-8272
Fax 800-329-8272
e-mail: experts@tasanet.com

Consultant direct tel 256-508-2493
e-mail: dakeen@bellsouth.net

Observations: The three projectiles evaluated (E1, E2, and E3) were fired from the same weapon and are reported as such on page 6 of this report. Measurement of the three projectiles caliber, twist, number of lands & grooves, apparent rate of twist and engravings were consistent as being fired from the same weapon. Comparison microscope evaluation revealed sufficient detail and number of *unique individual engraving features* that credibly indicates the projectiles were fired from the same weapon.

Of the three weapons of interest in this report (shown in red on the table below) the only discerning ballistics feature that would potentially indicate a likelihood that they were fired from one of the three is the land and groove width measurements. Referring to manufacturer published tabular data, typical land and groove widths formed by weapon make and model for selected 9mm handguns are shown on the table.

| CARTRIDGE | MANUFACTURER | TWIST | L&G | LAND | GROOVE |
|---|---|---|---|---|---|
| 9MM | AA ARMS, INC | R | 6 | ... | .121 |
| 9MM | ASTRA | R | 6 | .053 | .128 |
| 9MM | ... | ... | ... | ... | ... |
| 9MM | ... | ... | ... | ... | ... |
| 9MM | ... | ... | ... | ... | ... |
| 9MM | ... | ... | ... | ... | ... |
| 9MM | ... | ... | ... | ... | ... |
| 9MM | SMITH & WESSON | R | 6 | .056 | .122 |
| 9MM | ... | ... | ... | ... | ... |
| 9MM | SWD INC | R | 6 | .055 | .120 |

Table of selected 9mm weapons by manufacturer showing engraving data

Since the murder related firearm is not available for comparison, the projectiles were evaluated for general rifling characteristics. This determination form seeks to eliminate which weapons would likely have not fired the projectiles, leaving one or two as strong suspects than the others. The discerning and measurable characteristic that distinguishes the three weapons is the slight difference in land and groove engraving markings each make on a projectile when firing.

Evidence Land .0054   Astra Model A-100 Land .0053   .0001 difference
Evidence Groove .127  Astra Model A-100 Groove .128   .001 difference

                       S&W Model 59 Land .0056   .0002 difference
                       S&W Model 59 Groove .122  .005 difference

SWD Model M-11 and 0.055"         0.001" difference
SWD Model M-11 Groove 0.136"       0.007" difference

Conclusion: Based upon the limitations listed herein, the available physical evidence and data, the Astra model A-100 appears to be closest to the engravings found on evidence projectiles J-1, J-2 and J-3 therefore the most likely weapon type used to fire the projectiles used in the murder of Mr. Hector Manuel Colon Hernandez, AKA "Santito" on March 8, 1997 in Guayama, Puerto Rico. The Astra combined measurement difference is 0.002" therefore significantly smaller in difference than the other two weapons. The S&W Model 59's combined difference of 0.007" and the SWD Model M-11's combined difference of 0.008" are the least like the projectiles in evidence. END OF REPORT